# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## IN THE EASTERN DIVISION

**DWIGHT ABERNATHIE,**
**Inmate No. 1076917;**

       Plaintiff,

Case No.: 23-cv-1044
Hon. Henry Edward Autrey

vs.

**JURY TRIAL DEMANDED**

**SGT. CARL HART, CAPT.  RENEE NEEL,**
**SGT. CAMPELL, Ofc. EDWIN MESSERSMITH, Ofc. GARY TIEFENAUER,**
**TYSON MANCHE, SGT. ROBERT RECKERT, Ofc. DENNIS SPRADLING, Ofc.**
**DONALD ARMBRUSTER,** in their individual capacities,

       Defendants.

_____/

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, **DWIGHT ABERNATHIE**, by and through his attorney, Ian T. Cross,

Esq., having received consent from Defendants' counsel to file an amended pleading,

states for his First Amended Complaint the following:

## JURISDICTION

1.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3),

1367; and 42 U.S.C. § 1983, and the Court has jurisdiction over any award of attorneys'

fees under 42 U.S.C. § 1988.

1

## **VENUE**

2.      Venue is based on the provisions of 28 U.S.C. § 1391(b)(2), as the events giving rise to the claims occurred within the State of Missouri, County of Saint Francois in the Eastern District of Missouri, Eastern Division. See 28 U.S.C. § 105(a)(1).

## **PARTIES**

3.      Plaintiff Dwight Abernathie ("Plaintiff") (Missouri Department of Corrections Inmate No. 1076917) was confined at Eastern Reception, Diagnostic, and Correctional Center ("ERDCC") in Bonne Terre, Missouri, on October 28, 2021, at all times relevant to the instant complaint. The plaintiff was later transferred to South Central Correctional Center, Licking, Missouri, where he is currently confined.

4.      Defendant CARL HART was a Sergeant on duty on October 28, 2021, at ERDCC and was personally involved in the events giving rise to the instant action. Defendant HART is currently in federal custody-serving an 84 month prison sentence for violating Plaintiff's civil rights and for crimes related to possession of child pornography.

5.      Defendant RENEE NEEL was a Captain on duty on October 28, 2021 at ERDCC and was personally involved in the events giving rise to the instant action.

6.      Defendant WILLIAM CAMPBELL was a Sergeant on duty on October 28, 2021 at ERDCC and was personally involved in the events giving rise to the instant action.

7.    Defendant GARY TIEFENAUER was a corrections officer on duty on October 28, 2021 at ERDCC and was personally involved in the events giving rise to the instant action.

8.    Defendant EDWIN MESSERSMITH was a corrections officer on duty on October 28, 2021 at ERDCC and was personally involved in the events giving rise to the instant action.

9.    Defendant DENNIS SPRADLING was a corrections officer on duty on October 28, 2021 at ERDCC and was personally involved in the events giving rise to the instant action.

10.    Defendant ROBERT RECKERT was a corrections officer on duty on October 28, 2021 at ERDCC and was personally involved in the events giving rise to the instant action.

11.    Defendant TYSON MANCHE was a sergeant on duty on October 28, 2021 at ERDCC and was personally involved in the events giving rise to the instant action.

12.    Defendant DONALD ARMBRUSTER was a corrections officer on duty on October 28, 2021 at ERDCC and was personally involved in the events giving rise to the instant action.

13.    At all times relevant to the instant action each defendant acted under color of state law and each defendant is sued in their individual capacity.

## STATEMENT OF MATERIAL FACTS

14.    On October 28, 2021, Defendants MESSERSMITH and SPRADLING conducted a routine search of Plaintiff's cell.

15.    Upon returning to his cell on October 28, 2021, Plaintiff discovered his pictures torn in half and laying on the cell floor.

16.    Plaintiff approached Defendant TIEFENAUER, the unit "bubble" officer, and reported the destruction of his personal property by MESSERSMITH and SPRADLING. TIEFENAUER acknowledged the officers' misconduct, stating they should have known better. He advised Plaintiff to visit the Case Manager's office and speak to the on-duty sergeant, defendant HART.

17.    Plaintiff immediately became apprehensive upon learning that Defendant HART was the sergeant on duty, as HART was known by Plaintiff, other inmates, and staff to be overtly hostile towards inmates, volatile and prone to violence. HART was known by Plaintiff and other inmates to be an active member of "Family Values" (a criminal gang), and routinely acted as an enforcer for other guards. Despite his reluctance and better judgment, Plaintiff proceeded to the Case Manager's office.

18.    Upon entering the office and informing Defendant HART about the destruction of his personal property by Defendants MESSERSMITH and SPRADLING, defendant HART became incensed, aggressively shouting, "shut your fucking mouth, you're a

goddamn inmate!" Defendant HART further stated, "nothing you fucking say matters" and ordered Plaintiff to leave the office and return to his wing.

19.    Fearing retaliation, Plaintiff returned to his wing, contacted a family member via telephone to explain the situation, and while on the phone Plaintiff heard an order instructing him to hang up the phone and return to his cell.

20.    Plaintiff observed Defendants MESSERSMITH and SPRADLING, visibly angry, charging towards him and instructing him to get off the phone. Plaintiff hung up the phone and walked towards his cell, as the Defendants followed behind him screaming obscenities.

21.    Unable to understand the Defendants' commands, Plaintiff briefly looked back while continuing to walk forward in an attempt to understand what the Defendants were yelling. In response to this harmless action, Defendants MESSERSMITH sprayed the back of Plaintiff's head with OC spray.

22.    Fearing that the Defendants were intent on hurting him, Plaintiff changed direction and moved towards the camera suspended in the middle of the housing unit.

23.    Plaintiff then noticed Defendant HART quickly approaching him from the side holding a large canister of OC spray.

24.    Due to the continued discharge of chemical agents in the plaintiff's face by defendants HART, MESSERSMITH, and SPRADLING, the plaintiff was unable to see

or breathe properly. In an attempt to alleviate the intense burning sensation and catch his breath, the plaintiff entered the shower at 8:08:28 PM.

25. At this point, Defendant HART radioed 10-5 (Immediate Assistance Needed) then entered the shower behind Plaintiff with defendants MESSERSMITH AND SPRADLING at 8:08:40 PM. There, out of the view of cameras, defendants HART, MESSERSMITH AND SPRADLING brutally attacked the Plaintiff from behind.

26.    Defendants MESSERSMITH AND SPRADLING repeatedly punched the Plaintiff in the back of the head, face, torso and groin while defendant HART repeatedly struck Plaintiff in the face and head with a metal object.

27.    Upon information and belief, the metal object defendant HART utilized as a weapon to repeatedly strike at Plaintiff's face and head was a pair of handcuffs.

28.    At approximately 8:09:16 PM defendant RECKERT responded to the shower followed by defendants ARMBRUSTER and MANCHE, all of whom witnessed and/or participated in the assault.

29.    At 8:09:32 PM, Plaintiff was dragged out of the shower and thrown face down on to the floor when defendants HART, MESSERSMITH, SPRADLING, RECKERT, ARMBRUSTER and MANCHE piled on top of him and begin placing restraints on Plaintiff with defendant HART positioned on the middle of Plaintiff's back.

30.    While defendant HART was positioned on Plaintiff 's back, defendant MANCHE struck Plaintiff with a closed fist at least two times on his right side as he lay face down, defenseless, offering no resistance, and unable to see and breathe properly.

31.    Defendant HART proceeded to forcefully twist Plaintiff's handcuffed wrists and fingers as one of the defendants yelled, "break a finger, break a finger!"

32.    Defendant HART continued his efforts to cause injury to Plaintiff's handcuffed wrists and fingers in clear view of defendants MESSERSMITH, SPRADLING, RECKERT, ARMBRUSTER, MANCHE AND TIEFENAUER for approximately one minute and thirty-nine seconds.

33.    Defendants MESSERSMITH, SPRADLING, RECKERT, ARMBRUSTER, MANCHE AND TIEFENAUER, ignored the plaintiff's cries for help and screams of pain for a minute and thirty-nine seconds. During this time, the plaintiff was laying face down, unable to see and breathe properly, restrained and defenseless against defendant Hart's sadistic attempt to "break a finger" for the same duration.

34.    When defendant HART abruptly stopped his efforts at further injuring Plaintiff's wrists and fingers, Plaintiff was forcibly pulled to his feet by means of lifting Plaintiff's cuffed wrists, and then escorted to Administrative Segregation (Ad Seg).

35.    In Ad Seg, Plaintiff's clothes were cut off and he was left naked for 24 hours and exposed to the lingering effects of chemical agents for 48 hours before being permitted to shower.

36.     Later in the evening on October 28, 2021, Defendants CAMPELL and HART

came and read Plaintiff the major misconduct ticket HART issued him, which read:

On the above date and approximate time during a use of force involving Offender
Abernathie, Dwight #1076917 I received an injury to my right hand breaking multiple
fingers. This happened due the actions of Offender Abernathie. By the Offenders own
actions he places himself in violation of rule #2.1 Major Assault.

Note: The above injuries required outside medical treatment.

37.     Plaintiff informed Defendant CAMPBELL that the misconduct ticket was untrue

and that he wished to plead not guilty.

38.     Defendant HART replied, "No, you don't have that right. That 20 years you got to

do, now add 19 to it."

39.     Defendant CAMPBELL and HART refused Plaintiff's request to shower in order

wash off the chemical agent that covered his body.

40.     Later when Defendant NEEL had an opportunity to speak to Plaintiff about the

incident, she too refused Plaintiff's request for a shower.

41.     It would later be determined that Defendant HART had sustained a broken finger

as a result of punching Plaintiff multiply times in the back of his head but this

determination was made after Plaintiff spent approximately 32 weeks in Ad Seg, in

constant fear of retaliation by other officers and criminal prosecution related to the false

allegations lodged against him by Defendant HART.

42.      As a direct result of the Defendants' actions and events on October 28, 2021, and

the falsified misconduct report written on Plaintiff by Defendant HART, Plaintiff spent

approximately 32 weeks in Ad Seg (isolation), without phone privileges, restricted mail, and limited recreation.

43.    As a direct result of the Defendants' actions and events on October 28, 2021, Plaintiff sustained numerous cuts and bruises to his head, face, and hands. In the days following the attack, Plaintiff's left eye was swollen completely shut and Plaintiff is no longer able to see clearly from his left eye. Because his ribs became separated, Plaintiff developed an infection in his chest which required antibiotics. Plaintiff continues to experience pain in his ribs.

44.    Because the incident was captured on institutional security cameras, Defendants and prison administrators knew as early as October 28, 2021, that Defendant HART's allegations against Plaintiff were fabricated and that Plaintiff had been the victim of a brutal unprovoked and unjustified attack.

45.    On October 29, 2021, the Use of Force Committee informed Warden David Vandergriff that after reviewing of the use of force documentation for the October 28, 2021 incident, the committee believed the amount of force used was "not necessary and the use of force could have been prevented."

46.    A Final Review Committee met on November 2, 2021, consisting of Warden Vandergriff, DWOM Heather Cofer, Chief of Custody Sam McFerron and Investigator Darrell Wagganer and determined that after reviewing the Use of Force Packet and

video, further investigation was needed for "possible excessive/unnecessary force being utilized."

47.    Despite having knowledge that Defendant HART's allegations against Plaintiff were fabricated, and that Plaintiff had been the victim of a brutal unprovoked and unjustified attack, prison administrators allowed the Defendants to conspire and attempt to cover up the assault on Plaintiff by issuing false reports, providing false statements, and failing to accurately report the incident and Defendant HART's egregious conduct.

48.    On April 29, 2022, Warden Vandergriff sent a memorandum to Chief Security Coordinator James Hurley informing him that the investigation found insufficient evidence to support the allegation of excessive or unnecessary force being applied to Plaintiff.

49.     Defendant HART was eventually held to account for his criminal conduct. Federal prosecutors indicted HART for willfully violating Plaintiff's civil rights (18 U.S.C. § 242), and for additional federal charges related to possession of child pornography.

50.    On May 13, 2023, Defendant HART entered a guilty plea in the United States District Court for the Eastern District of Missouri in Case No. 4:22- CR-00692 RLW. Defendant HART admitted to willfully violating Plaintiffs' civil rights.

51.    On October 4, 2023, Defendant HART was sentenced to 84 months incarceration for one count of deprivation of civil rights and two counts of possession of child pornography.

## CAUSES OF ACTION

## COUNT I

**Violation of the Eighth Amendment to the United States Constitution Cruel and Unusual Punishment (42 U.S.C. § 1983)**
**(As to Defendants HART, MESSERSMITH, MANCHE, and SPRADLING)**

52.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein in their entirety.

53.    The Eighth Amendment of the United States Constitution, as incorporated against States via the Fourteenth Amendment, guarantees that prisoners shall not be subjected to cruel and unusual punishment by State actors, including the unnecessary and wanton infliction of pain by prison officials.

54.    Defendants HART, MESSERSMITH, MANCHE and SPRADLING (collectively, "Count I Defendants") are state actors who used unjustified and unreasonable force against Plaintiff in violation of the Eighth Amendment.

55.    As described above in detail, the Count I Defendants used excessive, unjustifiable force, wantonly and sadistically against Plaintiff when they pepper sprayed and punched

repeatedly Plaintiff in the head, face, side and groin as Plaintiff stood in the shower with his back to the Defendants and offered no resistance.

56.    The force used by Count I Defendants was not in good faith nor in an effort to maintain control or security; Rather, the force was used to punish Plaintiff for the complaints he made against Defendants MESSERSMITH and SPRADLING.

57.    As described above, Plaintiff posed no threat to Count I Defendants and Defendants could not have reasonably perceived any of Plaintiff's actions as constituting a threat to their safety or prison security.

58.    Count I Defendants acted maliciously and sadistically in furtherance of their targeted attack on Plaintiff by unnecessarily and wantonly inflicting pain, in violation of Plaintiff's constitutional rights.

59.    Count I Defendants fabricated false disciplinary and incident reports that alleged that Plaintiff had caused injuries to HART and SPRADLING in an attempt to further punish Plaintiff and to cover up their unlawful, immoral, and criminal conduct.

60.    Count I Defendants inflicted the following punishment/harm to Plaintiff:

a) Abrasions, bruises, and cuts to his head, face, side, groin and hands;

b) Causing Plaintiff's vision to deteriorate;

c) Causing Plaintiff to develop an infection as a result of his ribs being separated; and

12

d) Causing to Plaintiff suffer distress, trauma, fear, anxiety and depression resulting from his physical injuries.

61.    As a result of Count I Defendants' unprovoked conduct described above, Plaintiff suffered and is entitled to recover compensatory damages pursuant to 42 U.S.C. §1983 in an amount to be proved at trial and punitive damages for Defendants' willful and malicious conduct.

## COUNT II

**Violation of the Eighth Amendment to the United States Constitution Cruel and Unusual Punishment – Failure to Protect / Failure to Intervene (42 U.S.C. § 1983) (As to all Defendants)**

62.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein in their entirety.

63.    Defendants HART, MESSERSMITH, NEEL. CAMPELL, TIEFENAUER, SPRADLING, MANCHE, RECKERT. and ARMBRUSTER  (collectively, "Count II Defendants"), were present during and observed the excessive use of force used against Plaintiff.

64.    Defendants HART, MESSERSMITH, SPRADLING, MANCHE, RECKERT, ARMBRUSTER and TIEFENAUER listened as Plaintiff screamed in pain, stood by and watched as HART sat on Plaintiff's back and repeatedly twisted at his handcuffed wrists and fingers in a sadistic attempt to break them.

13

65.     Defendants HART, MESSERSMITH, SPRADLING, MANCHE, RECKERT, and ARMBRUSTER, watched as HART repeatedly stuck Plaintiff in the back of his head and face with pair of metal handcuffs clinched in his left fist.

66.     Defendants NEEL and CAMPELL observed Plaintiff's injuries immediately following the attack and failed to ensure that he received medical attention.

67.     Defendants NEEL and CAMPELL, knew of the lingering effects of chemical agents on the human body, including the intense burning sensation they cause to the eyes and skin and the breathing difficulties they induce. Despite this knowledge, both NEEL and CAMPELL, individually and separately, denied the plaintiff's request for a shower.

68.     The refusal of defendants NEEL and CAMPELL to allow the plaintiff an opportunity to shower after exposure to chemical agents served no penological or institutional safety interest. Instead, it was done expressly to further punish the plaintiff and cause him physical harm and discomfort.

69.     The Count II Defendants each had a realistic opportunity to intervene and prevent the unjustified use of force against the Plaintiff.

70.     The Count II Defendants each were obligated to intervene and protect Plaintiff from the excessive force that unfolded before their eyes and ears, as each officer had a duty to intervene to protect an inmate when he saw another officer using excessive force against a prisoner.

71.     The non-intervention of Count II Defendants violated the Eighth Amendment rights of Plaintiff by failing to protect him from excessive force and their inaction manifested deliberate indifference to a substantial risk of serious harm and actual infliction of serious harm as described above.

72.     As a result of Count II Defendants' conduct, Plaintiff suffered and is entitled to recover compensatory damages pursuant to 42 U.S.C. § 1983 in an amount to be proved at trial and punitive damages for Defendants' willful and/or malicious conduct.

## COUNT III

**Violation of the Eighth Amendment to the United States Constitution Cruel and Unusual Punishment – Failure to Properly Train and Supervise (42 U.S.C. § 1983) (As to Defendants Neel, Campell and Hart)**

74.     Plaintiff repeats and realleges the foregoing paragraphs, as though fully set forth herein in their entirety.

75.     Defendants (collectively, the "Count III Defendants") violated the Eighth Amendment rights of the Plaintiff by failing to properly train and supervise the Count I and Count II Defendants in their duties to provide care and custody to ERDCC prisoners and to use only reasonable and appropriate force and by failing to properly supervise their subordinates and enforce proper procedures concerning the use of force against prisoners.

76.    In violation of their duties, Count III Defendants directly enabled and sanctioned the use of excessive force in violation of and with deliberate indifference to the Plaintiff's Eighth Amendment rights.

77.    Based on the facts known and observed by Count III Defendants, including that Plaintiff had been pepper sprayed unnecessarily, beaten about the face and head with a pair of metal handcuffs and was lying face down with his hands cuffed behind his back and was offering no resistance, while Defendant HART continued to inflict pain upon the Plaintiff in his attempt to cause him great physical injuries, Count III Defendants acquiesced in the use of excessive force against prisoners at ERDCC.

78.    Rather than providing Count I and Count II Defendants with proper training and supervision, Count III Defendants allowed and/or implicitly authorized and/or acquiesced in continuing the unspoken policy or custom at ERDCC whereby ERDCC officers assault ERDCC prisoners as a means of retaliation; failed to take appropriate remedial measures against correctional officers who perpetuate the unspoken policy or custom of committing assaults on prisoners as a means of retaliation; and otherwise allowed a culture of tolerance and/or acquiescence for civil rights violations to exist at ERDCC, whereby correctional officers at ERDCC believe they can use unnecessary force with impunity.

79.    Upon information and belief Count III Defendants were aware of defendant HART's propensity for unjustifiable violence against prisoners.

80.    Upon information and belief Count III Defendants knew of defendant HART's reputation among the staff and inmates at ERDCC as being a heavy handed "enforcer" at the Institution.

81.    Upon information and belief Count III Defendants were aware that defendant Hart demanded the same heavy-handed approach from his subordinates when enforcing rules.

82.    Defendants HART, MESSERSMITH and SPRADLING, perpetuated, and Count III Defendants allowed and/or implicitly authorized and/or acquiesced in the execution of the above-described policy and/or custom against Plaintiff as described above.

83.    As a result of Count III Defendants' conduct, Plaintiff was punished by the inflicted physical, mental, and emotional injuries described above, and, in addition, Plaintiff was punished with approximately 32 weeks in solitary confinement.

84.    As a result of Count III Defendants' conduct, Plaintiff suffered and is entitled to recover compensatory damages pursuant to 42 U.S.C. § 1983 in an amount to be proved at trial and punitive damages for Defendants' willful and/or malicious conduct.


**COUNT IV**

**Violation of the First Amendment to the United States Constitution Retaliation for Exercising First Amendment Rights (42 U.S.C. § 1983)**
**(As to all Defendants)**

85.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein in their entirety.

86.    Under the First Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, Plaintiff was engaged in a constitutionally protected activity when he complained of Defendants' misconduct on October 28, 2021, and this protected activity was a substantial and motivating factor in the Defendants' decision to retaliate against Plaintiff.

87.    The First Amendment protects Plaintiff against state action that substantially burdens his ability to engage in protected speech.

88.    By assaulting and pepper spraying Plaintiff, confining him to Ad Seg after the attack, leaving him naked covered in pepper spray and retaliating against him in the myriad ways described above, Defendants have substantially inhibited and constrained conduct and expression that manifests central tenets of Plaintiff's right to engage in free speech, and Defendants meaningfully curtailed and retaliated against Plaintiff for exercising his First Amendment right. The retaliation visited on Plaintiff, including a brutal physical assault, placement in administrative segregation for months, and false misconduct charges, would deter a person of ordinary firmness from exercising their First-Amendment rights.

89.    Plaintiff respectfully requests that the Court enter a judgment in his favor, and against the Count IV Defendants in their individual capacity for damages in whatever

amount Plaintiff is found to be entitled; costs and attorneys' fees wrongfully incurred to bring this action; and any other damages, including punitive damages, as provided by applicable law.

## COUNT V

### Conspiracy to Violate Civil Rights (42 U.S.C. § 1983)
### (As to all Defendants)

90.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein in their entirety.

91.    Defendants HART, MESSERSMITH, NEEL, TIEFENAUER, CAMPELL,- SPRADLING, RECKERT, MANCHE and ARMBRUSTER (collectively, "Count V Defendants") acted in concert to use unjustified and excessive force, to cover up the assault of Plaintiff through false incident reports, false disciplinary charges, and false testimony and to retaliate against Plaintiff in violation of his First and Eighth Amendment rights.

92.    Defendants HART, MESSERSMITH and SPRADLING acted in a preplanned and coordinated effort to retaliate using force against Plaintiff for his complaint against Defendants MESSERSMITH and SPRADLING.

93.    Defendants HART, MESSERSMITH and SPRADLING pepper sprayed, beat and punched Plaintiff, continued their conspiracy to cover up their conduct, and further deprived Plaintiff of his constitutional rights by coordinating to fabricate incident reports and disciplinary charges against Plaintiff.

94.    Remaining Count V Defendants participated in the conspiracy by observing the above Defendants assault Plaintiffs and purposely standing by and failing to intervene or accurately report the incident.

95.    As a result of Count V Defendants' conduct, Plaintiff is entitled to recover compensatory damages pursuant to 42 U.S.C. § 1983 in an amount to be proved at trial and punitive damages for Defendants' willful and/or malicious conduct.

## COUNT VI

### Common Law Battery
### (As to Defendants Hart, Messersmith, Spradling and Manche)

96.    Plaintiffs repeat and re-allege the foregoing paragraphs, as though fully set forth herein in their entirety.

97.    A defendant is subject to liability for battery if he intends to, and actually does, cause harmful or offensive contact with the person of another.

98.    Defendants HART, MESSERSMITH, SPRADLING and MANCHE, (collectively, "Count VI Defendants") intentionally attacked and used unjustifiable force against Plaintiff, thereby committing battery.

99.    Defendants HART, MESSERSMITH and SPRADLING needlessly and without justification sprayed Plaintiff with O/C pepper spray for the sole purpose of causing him physical pain, injury and discomfort.

100.   Count VI Defendants beat and punched Plaintiff in the head, face, side and groin while he was pressed face first into the shower stall wall and offered no resistance, thereby committing battery.

101.   Defendant HART repeatedly stuck Plaintiff in the head and face with a pair of metal handcuffs, thereby committing battery.

102.   Defendant MANCHE punched Plaintiff in his side with a closed fist two times as Plaintiff lay face down on the ground with numerous officers piled on top of him, unable to see or breath properly, and offering no resistance.

103.   Defendant HART unnecessarily twisted Plaintiff's handcuffed wrists and fingers for the sole purpose of inflicting pain and causing injury, thereby committing battery.

104.   Plaintiff respectfully requests that the Court enter a judgment in his favor, and against the Count VI Defendants in their individual capacities for damages in whatever amount Plaintiff is found to be entitled; costs and attorneys' fees wrongfully incurred to bring this action; and any other damages, including punitive damages for the Defendants' willful and/or malicious conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in their favor and against Defendants on each and every count in this Complaint and enter

an order awarding all appropriate damages to Plaintiff and relief adequate to remedy the statutory and constitutional violations. Plaintiff also requests attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and that the Court order any further relief the Court may deem just and proper.

Dated: August 24, 2024                    Respectfully Submitted,


**CROSS LAW PLLC**


/s/ Ian T. Cross
Ian T. Cross P83367(MI)
Admitted Pro Hac Vice
*Attorney for Plaintiff Dwight Abernathie*
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
ian@lawinannarbor.com


**JURY DEMAND**

Plaintiff, by and through his undersigned counsel, and hereby demands a jury trial of the above causes of action so triable.


Dated: August 24, 2024                                    Respectfully Submitted,


                                                 **CROSS LAW PLLC**

                                                 */s/ Ian T. Cross*
                                                 Ian T. Cross P83367(MI)
                                                 Admitted Pro Hac Vice
                                                 *Attorney for Plaintiff*
                                                 402 W. Liberty St.
                                                 Ann Arbor, MI 48103
                                                 (734) 994-9590
                                                 ian@lawinannarbor.com